IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GAYLE REEDY, et al.,

          Plaintiffs,

    v.

BOROUGH OF COLLINGSWOOD,

          Defendant.

HON. JEROME B. SIMANDLE

Civil No. 04-4079 (JBS)

**OPINION**

APPEARANCES:

F. Michael Daily, Jr., Esquire
Sentry Office Plaza
216 Haddon Avenue
Suite 100
Westmont, New Jersey 08108
    Attorney for Plaintiffs

Joseph M. Nardi, III, Esquire
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
    Attorney for Defendant

**SIMANDLE**, U.S. District Judge:

Plaintiffs, twelve owners of duplexes located in Collingswood, New Jersey, brought this action against Defendant, Borough of Collingswood ("Borough"), on behalf of all owners of owner-occupied duplexes within the Borough, of which there are presently approximately 187, claiming violations of federal and state law. This matter is presently before the Court upon Plaintiffs' application for a preliminary injunction, and the motion by Defendant to dismiss the Complaint under Rule 12(b)(6),

Fed.R.Civ.P.  For the reasons explained _infra_, the Court will deny the request for injunctive relief and grant the motion to dismiss in part.[1]

## I.  BACKGROUND

Pursuant to the Borough's original municipal code, enacted in 1949, duplex dwellings were permitted property uses.  (Compl. ¶ 22.)  By Ordinance No. 846, adopted in 1985, the Borough eliminated the conversion from single family homes to multi-family dwellings.  By Ordinance No. 1126, adopted in 1997, the Borough amended the Borough Code and rendered duplexes non-conforming uses.  (_Id._ ¶¶ 22, 23.)

Pursuant to §§ 237-6 and 237-10 of the Borough's Municipal Code, all rental units must register and pay an annual rental registration fee.[2] Additionally all rental units are subject to inspections.  Inspections are conducted on all rental properties registered in the Borough on an annual basis and as needed based

---

[1] An Order to Show Cause was filed on September 9, 2004, [Docket Item 5,] and the Court heard oral argument on October 13, 2004.  Subsequently, the parties submitted supplemental briefs as to several issues, and requested that the Court permit them additional time to discuss settlement options.  By letter dated December 14, 2004, counsel for Plaintiffs informed the Court that the parties were unable to resolve the matter extrajudicially, and asked the Court to "move forward with the presently pending motions."

[2] "Rental unit" is defined by the Code as "a dwelling unit or commercial unit which is available for lease or rental purposes."  The definition does _not_ include that portion of a rental facility occupied by the owner.  Code § 237-4.

upon observation or information indicating inadequate conditions. The Borough utilizes members of the fire department to conduct the property maintenance inspections of registered rental properties in the Borough.

If an inspection reveals violations of the property maintenance and fire safety codes, the property owner is advised, in writing, of the deficiencies.  If the required repairs are not made by the owner within a stated time period, a citation may be issued or additional time to cure may be granted to the owner upon request.  If a citation is issued, violators are required to appear at a municipal court proceeding where they face fines up to $1,000 for each violation for each day and imprisonment for a period not to exceed 90 days.  The Borough Code explicitly excludes an administrative appeals process.[3]

This Court has not been made aware of any outstanding notices of violation or municipal court summonses or complaints issued to Plaintiffs since the inception of this suit.  (Oct. 15, 2004 Amet Cert. ("Amet Cert.") ¶ 7.)  Moreover, since the inception of the property maintenance code inspection process, no property owners of owner-occupied duplexes have been

---

[3] On March 21, 1994, the Borough adopted by reference into its municipal code the BOCA National Property Maintenance Code of 1993 ("BOCA Code").  Though the BOCA Code provides for the right to an administrative appeal of a citation for property maintenance code violation, the Borough Code excludes those provisions.

incarcerated, nor have any daily fines been imposed and collected against them.[4] (Id. ¶ 5.)

Plaintiffs brought suit in this Court alleging claims under the First, Fourth, Fifth and Fourteenth Amendments, as well as the New Jersey Constitution and New Jersey state law, seeking a preliminary injunction and damages.  Count One of the Complaint alleges violations of Plaintiffs' procedural due process and equal protection rights under the Fifth and Fourteenth Amendments.  In Counts Two, Three, Four and Seven Plaintiffs allege violations of their substantive due process and equal protection rights under the Fifth and Fourteenth Amendments.  In Count Five Plaintiffs allege violations of their Fourth and Fourteenth Amendment rights guaranteeing freedom from unreasonable searches.  Count Six alleges violations of the First Amendment.  Finally, in Count Eight Plaintiffs allege that the Borough Ordinance is an invalid exercise of municipal authority in violation of the New Jersey Constitution.  Defendant has moved to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6) in its entirety.

---

[4] In September 2003, following an inspection at her property, Plaintiff Elena Flynn was notified of the need to correct twelve alleged maintenance code violations at her duplex. A reinspection occurred roughly eight months later, in May of 2004, which revealed that only two of the twelve original alleged violations remained.  The Borough allowed Ms. Flynn an additional two weeks to correct the violations, though further reinspection revealed that she apparently had not done so.  At that time, a municipal court summons was issued setting a June 2004 court date.  Prior to that date, the Borough determined that Ms. Flynn had abated the final two violations and dismissed the matter, without any costs or penalties being assessed.  (Amet Cert. ¶ 8.)

## II.   STANDARDS OF REVIEW

A.   <u>Preliminary Injunction</u>

Issuing a preliminary injunction is "an 'extraordinary remedy' and should be restricted to 'limited circumstances.'" <u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 800 (3d Cir. 1988).  In ruling on a motion for a preliminary injunction, the Court must consider: (1) the likelihood that the moving party will prevail on the merits; (2) the extent to which, if any, the moving party will be irreparably harmed; (3) the extent to which the non-moving party will suffer irreparable harm if the injunction is granted; and (4) the public interest.  <u>AT&T Co. v. Winback and Conserve Program, Inc.</u>, 42 F.3d 1421, 1427 (3d Cir. 1994).  The moving party bears the burden of proving that all elements required for an injunction are met.  <u>See</u> <u>Adams v. Freedom Forge Corp.</u>, 204 F.3d 475, 486 (3d Cir. 2000).  A preliminary injunction should issue only if the party seeking it produces evidence sufficient to convince the court that all four factors favor preliminary relief.  <u>Shire US, Inc. v. Barr Labs, Inc.</u>, 329 F.3d 348, 352 (3d Cir. 2003); <u>AT&T v. Winback and Conserve Program, Inc.</u>, 42 F.3d at 1427.

B.   <u>Motion To Dismiss</u>

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When deciding a Rule 12(b)(6) motion, the court may only take into consideration the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter.  Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  A district court must accept any and all reasonable inferences derived from those facts, Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F.Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F.Supp. 254, 260 (D.N.J. 1990), and the court must view all allegations in the complaint in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977); In re Midlantic Corp. Shareholder Litigation, 758 F.Supp. 226, 230 (D.N.J. 1990).  The question before the court is not whether plaintiffs will ultimately prevail but, rather, whether they can prove any set of facts in support of their claims that would entitle them to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In other words, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of

fact as true and construing them in a light most favorable to the
non-movant, plaintiff's allegations state a legal claim.
<u>Markowitz</u>, 906 F.2d at 103.

## III. DISCUSSION

    A.   <u>State Law Claim</u>

    Plaintiffs here challenge the Borough Municipal Code under
both federal and state law.  Plaintiffs' state law claim is set
forth in Count Eight, which alleges that the Borough Ordinance is
an invalid exercise of municipal authority in violation of the
New Jersey Constitution.  (Compl. ¶¶ 80, 81.)  The New Jersey
Supreme Court has previously considered under New Jersey law a
municipal housing inspection code of rental property similar in
kind to that presently before this Court.  On claims for which
New Jersey law provides the rule of decision, <u>Erie R.R. v.
Tompkins</u>, 304 U.S. 64 (1938), provides that this Court is bound
by that precedent; for the reasons now explained, this Court
determines that it is dispositive of the state law claims
presently before the Court.[5]

    In <u>Dome Realty, Inc. v. City of Paterson</u>, 416 A.2d 334 (N.J.
1980), the plaintiffs brought suit against Paterson, a municipal
corporation of New Jersey, as well as the Paterson Division of
Community Improvements, challenging the constitutionality of "An

---

    [5] Plaintiffs' federal constitutional claims will be
discussed <u>infra</u>.

Ordinance Requiring a Certificate of Occupancy for Re-Rental of Dwelling Units" under both the federal and New Jersey constitutions.  The ordinance applied to all rented residential dwellings, save two-family structures where one of the dwellings was owner-occupied.  Under the ordinance as originally enacted, the landlord of an affected dwelling was required to obtain a certificate of occupancy immediately prior to allowing a new tenant to take possession.  As a condition of issuing the certificate, the city department required an inspection of the rental unit.  Subsequent amendments to the ordinance, which were also before the court on review, provided for an appeals process by any aggrieved person.

In upholding the ordinance under both state and federal law, the court in Dome Realty noted at the outset that, "[a]s a general principle, it is established beyond question that municipalities, being created by the State, have no powers save those delegated to them by the Legislature and the State Constitution."  Id. at 341.  Thus, the court there focused its initial inquiry on whether the ordinance was a proper exercise of legislative authority by Paterson.

"Under this approach the first question is whether the State Constitution prohibits delegation of municipal power on a particular subject because of the need for uniformity of regulation throughout the State."  Id.  If the state legislature

8

may so delegate authority, the second question is whether the legislature has, in fact, done so.  Finally, a court is to consider whether the particular delegation of authority at issue has been preempted by other State statutes governing the identical subject matter.  In other words, "[t]he third part of the analysis reflects the Legislature's prerogative to divest delegated authority from a municipality."  Id.

In Dome Realty, the court answered all three questions in the affirmative.  First, the court noted that "[t]he State Constitution expressly permits the Legislature to delegate to municipalities the responsibility for regulating local land use by means of zoning schemes," so as to deal with local housing conditions.  Id. at 342 (citing N.J. Const. (1947), Art. IV, § 6 par. 2).  Indeed, the court there held that "enforcement of local housing standards is a particularly apt matter for local determination."  Dome Realty, 416 A.2d at 342.  For those reasons, the Court held that "the enforcement of local housing codes is a matter that is constitutionally appropriate for local initiative."  Id.

Second, having determined that the legislature had the power to delegate authority for the enforcement of local housing, the court in Dome Realty explained that the legislature had, in fact,

exercised that authority.[6] One source of municipal authority

relied on by the court was N.J.S.A. 40:48-2.12a, providing:

> The governing body of any municipality may make,
> amend, repeal and enforce ordinances to regulate
> buildings and structures and their use and occupation
> to prevent and abate conditions therein harmful to the
> health and safety of the occupants of said buildings
> and structures and the general public in the
> municipality.[7]

---

[6] Citing the then newly enacted N.J.S.A. 40:48-1.12m, the
court determined that "[i]n unmistakable terms" the legislature
had granted to municipalities the power to prohibit new rentals
of residential dwellings except after an official inspection.
Because the plaintiffs in that suit were complaining of
inspections which both pre- and post-dated the statute's
enactment, the court was compelled to further discuss whether a
basis for municipal authority existed independently of the
statute.  Here, because no single statute constitutes a
comparable explicit exercise of power, the Court will focus its
attention in the following discussion only on these independent
bases.

[7] In this case, Defendant similarly relies on N.J.S.A.
40:48-2.12a in support of its argument that the legislature has
unequivocally authorized municipalities to inspect and regulate
rental properties.  (Def. Supp. Br. at 2.)  This Court agrees.
To be sure, as the court in Dome Realty pointed out, N.J.S.A.
40:48-2.12a was enacted as part of "An Act concerning
municipalities in relation to the regulation of buildings and
structures and their use and occupancy, and supplementing Title
40 of the Revised Statutes," which "contains various sections
authorizing municipal registration of rental dwellings, N.J.S.A.
40:48-2.12c, abatement of defective conditions by municipal
expenditures, N.J.S.A. 40:48-2.12f, and the appointment of
custodians or receivers to supervise proper maintenance of rental
dwellings, N.J.S.A. 40:48-2.12g to -2.12k."  Id. at 343-44.
Those provisions, though, were made optional at the discretion of
the municipality and, thus, "[t]he general grant of enforcement
authority in N.J.S.A. 40:48-2.12a does not restrict its scope to
the several individual authorizations contained in later
provisions of the act.  This section would be devoid of
independent significance if we construed it as a mere summary of
specific authorizations."  Id. at 344.  Thus, quite contrary to
Plaintiffs' contention here, a broad reading of N.J.S.A. 40:48-
2.12a N.J.S.A. does not render -2.12c "meaningless."

10

A second "independently adequate source of delegated power" also exists, the court in Dome Realty held, in N.J.S.A. 40:48-2, the general "police power" statute.  "Such a broad 'reservoir of police power' is alone sufficient to permit municipal regulation of minimum standards for rental housing – an area that vitally affects 'health, safety and welfare' of residential tenants." Dome Realty, 416 A.2d at 344 (internal citations omitted).

Relying on N.J.S.A. 40:48-2.12a and -2, Dome Realty held that the municipal ordinance at issue was a valid exercise of authority delegated to it by the state legislature and, thus, that the second part of the three-part test had been satisfied. The court then turned to the question of preemption, holding that it could "find no indication – much less one that is clear – that the Legislature intended State regulation and enforcement of minimum standards of habitability to be exclusive.  We therefore find no preemption by the Legislature."  Dome Realty, 416 A.2d at 346.

For the same reasons expressed in Dome Realty, this Court concludes that the ordinance at issue is a proper exercise of municipal authority under New Jersey law and does not offend the State constitution.  Count Eight, therefore, will be dismissed. The next step of this Court's inquiry, then, is whether the ordinance here runs afoul of the federal constitution.  For the following reasons, this Court determines that, with one possible exception, it does not.

11

B.   <u>Fourth Amendment</u>

Plaintiffs allege in Count Five of the Complaint that the inspection, registration and regulation of Plaintiffs' properties by the Borough constitute unconstitutional searches.  (Compl. ¶ 71.)  The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  Under the Fourth Amendment, a 'search' occurs 'when an expectation of privacy that society is prepared to consider reasonable is infringed.'"  <u>Overstreet</u>, 305 F.3d at 576 (quoting <u>United States v. Jacobsen</u>, 466 U.S. 109, 113 (1984)).

"Here the plaintiff's [sic] have made factual allegations that the inspector firemen are bullying their way into the owner's areas without consent under the guise of the rental inspection ordinance."[8] (Pls. Reply Br. at 14.)  Pursuant to

---

[8] Initially, the Court notes that the Plaintiffs likely do not have standing to contest the inspections of their rental properties.  <u>United States v. Salvucci</u>, 448 U.S. 83, 91 (1980); <u>see</u> <u>Godshalk v. Borough of Bangor</u>, 2004 U.S. Dist. LEXIS, at *31 (E.D.Pa. May 5, 2004) ("[O]wnership alone is insufficient to confer standing to contest a search" under the Fourth Amendment). In any event, as the following discussion makes clear, Plaintiffs' Fourth Amendment claims must be dismissed.

§ 237-11 of the Collingswood Code:

> The inspection officers are hereby authorized to make inspections to determine the condition of <u>rental facilities, rental units and rooming/boarding houses</u>, in order that they may promote the purposes of this article to safeguard the health, safety and welfare of the occupants of rental facilities, rental units and rooming/boarding houses and of the general public.  For the purpose of making such inspections, the inspecting officers are hereby authorized to enter, examine and survey <u>rental facilities, rental units and rooming/boarding houses</u> at all reasonable times.  The owner or occupant of every rental facility, rental unit and rooming/boarding house shall give the inspecting officer free access to the <u>rental facility, rental unit and rooming/boarding house</u> at all times, for the purpose of such inspections, examinations and surveys.

(emphasis added).  Additionally, under § 237-21 of the Borough Code, any person who violates any provision of article 237 shall, upon conviction in the Municipal Court, be liable to a fine up to $1,000 and/or imprisonment for up to 30 days.

In support of their Fourth Amendment claims, Plaintiffs rely primarily on <u>Camara v. Municipal Court of San Francisco</u>, 387 U.S. 523 (1967), where the United States Supreme Court held that the resident-owner of a dwelling could not be prosecuted for refusing entry to a municipal housing official for purposes of conducting an inspection.  The Court there held that the "administrative searches of the kind at issue . . . are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual . . . ."  <u>Id.</u> at 534.

This Court concludes that the ordinance at issue here is sufficiently dissimilar from the one in Camara so as to distinguish that holding.  The housing code provision in Camara stated that:

> Authorized employees of the City departments or City agencies, so far as may be necessary for the performance of their duties, shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code.

Id. at 526 (emphasis added).  First, the Collingswood ordinance pertains only to entry by inspection officers for the purpose of inspections and surveys, while the San Francisco code broadly applied to all "authorized employees" as necessary to perform "any duty."  Second, as already noted, the Collingswood ordinance only authorizes inspections of "rental facilities, rental units and rooming/boarding houses," and not, like in Camara, the inspection of the plaintiff's personal dwelling.  And, as the court held in Dome Realty, there is a "diminished nature of the landlord's privacy interest in an apartment which he is making available for rent."  416 A.2d at 350.  To be sure, the ordinance in Dome Realty permitted inspection of vacant apartments immediately prior to being rented.  In this case, on the other hand, the ordinance does not make that distinction.  Regardless, though, unlike in Camara the plaintiffs here are not using the apartment as a residence or place of business.  Plaintiffs'

14

privacy interest in their duplex rental units is, thus, attenuated.  Plaintiffs' Fourth Amendment claims will be dismissed.

C.   Substantive Due Process and Equal Protection

In Counts Two, Three, Four and Seven Plaintiffs allege that Defendant violated their substantive due process and equal protection rights by (1) treating duplexes as a non-conforming use,[9] (2) utilizing improperly trained firemen to conduct the inspections, and (3) defining "rental unit" in such a way as to prohibit duplex owners from "defin[ing] their families."  (Compl. ¶¶ 62, 65, 68 and 77.)

First, Plaintiffs allege in Count Two that treating duplexes as a non-conforming use under the Collingswood Code "while permitting all other forms of residential uses, constitute[s] arbitrary and capricious acts which have deprived" Plaintiffs of substantive due process and equal protection of the law.  (Compl. ¶ 62.)  Defendant maintains that the Borough is permitted to prohibit certain types of structures while permitting others "so long as the government action rationally furthers some legitimate government purpose."[10]  (Def. Br. at 15.)  "In determining whether

---

[9] In Count Four Plaintiffs claim that the inspection process constitutes selective enforcement in violation of due process and equal protection.  (Compl. ¶ 68.)  For the same reasons as Count Two, Count Four will be dismissed as well.

[10] Defendant initially notes that "[t]o the extent that Plaintiffs' duplexes are valid pre-existing, non-conforming use[s], there has been and will be no effort by the Borough to prosecute the use of the structures as duplexes."  (Def. Br. at 15.)

a municipal ordinance is arbitrary or unreasonable, courts place a heavy burden on the proponents of invalidity." Dome Realty, 416 A.2d at 347. The proponent of invalidity must produce "proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest." Id. (citing Hutton Pk. Gardens v. West Orange Town Council, 350 A.2d 1 (N.J. 1975)).

Here, Defendant offers the following governmental purposes for prohibiting duplexes: (1) multi-family dwellings cause a more dense population; (2) single family homes promote more of a community feeling; (3) single family homes reduce traffic congestion; and (4) duplexes historically have fallen into a greater state of disrepair through the passage of time. (Def. Br. at 16.) With these interests in mind, this Court is persuaded that the ordinance here extending regulation to multifamily dwellings is not arbitrary or unreasonable and, thus, that Plaintiffs as a matter of law will not be able to produce adequate proofs supporting their claims.

Furthermore, as in Dome Realty, 416 A.2d at 351, Plaintiffs here "do not allege the existence of a fundamental interest in conducting their business as landlords; nor do they claim that landlords constitute a constitutionally suspect class." "In the

16

area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.  If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality." <u>Dandridge v. Williams</u>, 397 U.S. 471, 485 (1970).  Accordingly, Plaintiffs here must demonstrate that the classification lacks any rational basis." <u>Id.</u> (citing <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1 (1973)).  This Court holds that the governmental interests identified by Defendant, <u>supra</u>, are rational and, thus, do not offend the Fourteenth Amendment.  For theses reasons, Count Two will be dismissed.

Next, Plaintiffs allege in Count Three that the inadequate training of the inspectors causes the ordinances at issue to be "enforced in an arbitrary and capricious manner," in violation of Plaintiff's substantive due process and equal protection rights. (Compl. ¶ 65.)  N.J.S.A. 40:48-2.32 provides:  "The governing body of a municipality may contract with a volunteer fire company or companies to perform inspections pursuant to this act and in such case designate as agents of the municipality, for such purpose, the members of such fire company or companies."  Pursuant to that provision, Defendant utilizes inspectors who are appropriately qualified.  (<u>See</u> Def. Ex. E.)  Thus, Plaintiffs'

claim that the inspectors are improperly trained and inadequately certified, without more, is meritless.[11] Count Three will be dismissed.

Finally, in Count Seven Plaintiffs claim that the Borough Code's definition of "rental unit" prohibits duplex owners from "defin[ing] their families" in violation of their substantive due process rights.  Section 237-4 of the Collingswood Code defines "rental unit" as "[a] dwelling unit or commercial unit which is available for lease or rental purposes.  Rental unit shall not include that portion of a rental facility occupied by the owner."[12] All rental units are subject under the Collingswood Code to registration, licensing and periodic inspections.  See Collingswood Code § 237 et seq.  Plaintiffs maintain that the exclusion of duplexes from the definition of "rental unit" unconstitutionally infringes upon their right to "define their families" in the manner they choose.  (Pls. Reply Br. at 15-16.)

_____

[11] Plaintiffs additionally complain of the presence of "friends and other persons of no official standing" who "accompany" officials during the course of property inspections, (Compl. ¶¶ 41, 42.)  The Court is not troubled by that allegation as far as its substantive due process and equal protection analysis is concerned, as Plaintiffs do not suggest that these individuals participate in any way in the inspection process.

[12] "Rental Facility" is defined in the same section as "[e]very building, group of buildings or a portion thereof consisting of less than three dwelling units and has sleeping facilities for less than 25 occupants, kept, used, maintained, advertised or held out to be a place where living accommodations are supplied, whether furnishes or unfurnished, for pay or other consideration, to one or more individuals."

18

Plaintiffs cite a litany of privacy cases in support thereof:
Roe v. Wade, 410 U.S. 113 (1973) (holding the right to an
abortion is fundamental as guaranteed by the Due Process Clause
of the Fourteenth Amendment, though that a right is not
absolute); Loving v. Virginia, 388 U.S. 1, 12 (1967) (holding the
freedom to marry is fundamental); Griswold v. Connecticut, 381
U.S. 479 (1965) (holding there exists a constitutional right to
privacy which encompasses the right to use contraceptives);
Pierce v. Society of Sisters, 268 U.S. 510 (1925) (holding
parents enjoy the right to be free from government interference
in determining how to direct the upbringing and education of
their children); Meyer v. Nebraska, 262 U.S. 390 (1923) (finding
a liberty interest within the Fourteenth Amendment in a teacher's
right to teach and parents' right to engage the teacher in
educating their children); Prince v. Massachusetts, 321 U.S. 158
(1944) (holding the custody, care and nurture of children resides
first in the parents); Skinner v. Oklahoma, 316 U.S. 535 (1942)
(noting marriage and procreation are fundamental to the very
existence and survival of the race).

Relying on these cases, Plaintiffs contend that "an owner
who has children or invites family members to live with [him],
subjects himself to the burden of the Borough's registration,
licensing and inspection scheme in regard to his property, even
though there exists no landlord-tenant relationship."  (Pls.

19

Reply Br. at 16.)  Plaintiffs' argument overlooks the fact that only those duplex units that are <u>leased or rented</u> shall be subject to registration, licensing and inspection.  <u>See</u> Code § 237-4.  If a duplex owner were to rent or lease a dwelling unit to a family member, then a landlord-tenant relationship would of course exist and, thus, the Borough has the power to regulate the rental property.  <u>See</u>, <u>e.g.</u>, N.J.S.A. 40:48-2.12m; N.J.S.A. 2A:42-1 <u>et seq.</u>  Outside of the landlord-tenant context, however, Plaintiffs' right to "define their family" is in no way limited by the Borough Ordinance.  An owner may permit friends or family to occupy a unit for free without any landlord-tenant relationship.  Plaintiffs' substantive due process claim alleging otherwise will be dismissed.

      D.   <u>First Amendment Retaliation</u>

In Count Six Plaintiffs allege that the "actions of the Borough of Collingswood and its agents in retaliating against the plaintiffs for exercising their rights to speak on matters of public concern" violated Plaintiffs First Amendment rights. (Compl. ¶ 74.)  Plaintiffs plead no facts, however, to support that claim.  Indeed, Plaintiffs have not identified, either in the Complaint, in their written submissions to the Court, or at oral argument, any instance where they engaged in speech relating to the conduct of which they complain.  Plaintiffs' First Amendment claim must fail as pleaded.

20

E.   <u>Procedural Due Process</u>

Plaintiffs allege in Count One that by failing to provide adequate notice and an appeals process for violations of the Code deprives them of their rights under the Fifth and Fourteenth Amendments.  (Compl. ¶ 59.)

"It is established that a law fails to meet the requirements of the Due Process Clause if it so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." <u>City of Chicago v. Morales</u>, 527 U.S. 41, 56 (1999).  Plaintiffs here maintain that such uncertainty permeates the Collingswood Municipal Code, thereby rendering it unconstitutionally vague. Specifically, Plaintiffs contend that the Collingswood Code includes "numerous ambiguous and technical terms that leave ordinary people uncertain as to much of the conduct it prohibits."  (Pls. Br. at 13.)  Plaintiffs cite the following provisions of the BOCA Code, incorporated by reference by the Collingswood Code, in support of this proposition:

(1)   PM-303.1; prohibition on "noxious weeds";

(2)   PM-303.3; requirement that all sidewalks and driveways be maintained in "a proper state of repair";

(3)   PM-303.7; requirement that accessory structures be kept "structurally sound and in good repair";

(4)   PM-304.8; requirement that all overhang extensions be maintained in "good repair" and be "properly anchored" so as to be kept in a "safe and sound condition";

(5)   PM-304.9; requirement that all chimneys and towers be maintained "structurally safe and sound, and in good repair";

21

(6)   PM-304.10 and 305.6; requirement that handrails and guards be "firmly fastened and capable of supporting normally imposed loads" and shall be "maintained in good condition";

(7)   PM-304.11; requirement that all windows and doorframes be kept in "sound condition" and "good repair";

(8)   PM-304.13; requirement that all exterior doors and hardware be "maintained in good condition";

(9)   PM-304.15; requirement that guards for basement windows that are openable to be supplied with ratproof shields, storm windows or "other approved protection";

(10)   PM-305.1; requirement that the interior of a structure and equipment therein be "maintained in good repair" and "structurally sound";

(11)   PM-305.2; requirement that supporting structural members be "maintained structurally sound" and "be capable of supporting the imposed loads";

(12)   PM-305.3; requirement that peeling paint, cracked or loose plaster, decayed wood, and "other defective surface conditions" found on interior surfaces including windows and doors, be corrected";

(13)   PM-405.10; requirement that all spaces to be occupied for food preparations purposes contain "suitable space and equipment" to store and prepare food in a sanitary manner";

(14)   PM-505.1; requirement that all plumbing fixtures by "properly installed" and "maintained in a safe, sanitary and functional condition."

In Morales, 527 U.S. at 45-46, the Court struck down as unconstitutionally vague a statute that prohibited "criminal street gang members" from "loitering" with one another or with other persons in any public place.  That ordinance created a criminal offense punishable by a fine not to exceed $500, imprisonment up to six months, and a mandatory 120 hour community

service requirement.  Id. at 47.  In striking down the statute, the Court first noted that "the purpose of the fair notice requirement [of Due Process] is to enable the ordinary citizen to conform his or her conduct to the law."  Id. at 58.  Here, the Court is not persuaded that the above provisions contain language that is so ambiguous and technical so as to deprive the ordinary citizen in Collingswood of constitutionally required notice.

        Plaintiffs additionally argue, though, that their due process rights are violated by Defendant's failure to provide an appeals process for review of contested inspections.  In Ex parte Young, 209 U.S. 123 (1908), the Court reviewed the constitutionality of two separate state acts, both of which governed railway freight and passenger rates.  Violations of either act subjected the accused to imprisonment not exceeding ninety days, while only violation of the passenger rate act subjected the violator to both imprisonment and fine.  Id. at 145.  No appeals process was provided to challenge violations.[13]

────────────────

[13] Defendant argues that the facts of Ex parte Young are distinguishable from the facts in the instant case in that the potential fines there were more severe than the ones here.  This Court is not persuaded.  To be sure, the act in Ex parte Young subjected violators to fines up to $5,000, in today's dollars a significant sum.  Here, however, violators of the Collingswood Code are subject to fines of $1,000 for each violation for each day the violation occurs.  (Collingswood Code § 237-21.)  In other words, the potential total in the scheme at issue here is just as severe, if not more so, than the one examined in Ex parte Young.

Under the scheme in <u>Ex parte Young</u>, the Court held,

> [t]he company, in order to test the validity of the
> acts, must find some agent or employe to disobey them
> at the risk stated.  The necessary effect and result of
> such legislation must be to preclude a resort to the
> courts (either state or Federal) for the purpose of
> testing its validity.  The officers and employes could
> not be expected to disobey any of the provisions of the
> acts or orders at the risk of such fines and penalties
> being imposed upon them, in case the court should
> decide that the law was valid.  The result would be a
> denial of a hearing to the company.

<u>Ex parte Young</u>, 209 U.S. at 145-46.  In other words, "[i]t may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affected its rights."  <u>Id.</u> at 147.

To be sure, the Court in <u>Ex parte Young</u> distinguished "case[s] where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character," from the "ordinary case of a statute upon a subject requiring no such investigation and over which the jurisdiction of the legislature is complete in any event."  <u>Id.</u> at 148.  Arguably, the ordinance at issue here is more akin to the latter than to the former.  However, the Court concludes that whether or not this is the "ordinary case" is a question of fact that can not properly be decided at this juncture.

Defendant argues that although the Collingswood ordinance contains no appeals process as outlined in the BOCA Code, property owners in the Borough do have "appeal rights."  (Def. Br. at 14.)  Specifically, property owners are advised of the code violations, in writing, and given a reasonable time period to cure.  If the required repairs are not made by the owner within the stated time period, a citation may be issued or additional time to cure may be granted to the owner upon request. If a citation is issued, a municipal court hearing is scheduled in which the violation is prosecuted and a penalty in sought. That is the very argument that the Court implicitly rejected in Ex parte Young.  Indeed, the Court there was concerned that the severity of the potential penalties would discourage individuals from even risking the violation of the law, thereby closing the courts to legal challenges altogether.  For these reasons, Plaintiffs' due process claim will survive Defendant's motion to dismiss.  The Court, therefore, must decide whether Plaintiffs are entitled to a preliminary injunction upon this sole remaining ground.

As already noted, in considering an application for a preliminary injunction, courts must evaluate, among other factors, the extent to which, if any, the moving party will be irreparably harmed.  AT&T Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).  "The irreparable harm

25

requirement is met if a plaintiff demonstrates a significant risk
that he or she will experience harm that cannot adequately be
compensated after the fact by monetary damages." Adams v.
Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).  Rather,
"[a] plaintiff has the burden of proving a clear showing of
immediate irreparable injury.'" Hohe v. Casey, 868 F.2d 69, 72
(3d Cir. 1989) (emphasis added) (quoting ECRI v. McGraw-Hill,
Inc., 809 F.2d 223, 226 (3d Cir. 1987)).  Plaintiffs here can not
make such a showing and, thus, they are not entitled to a
preliminary injunction.[14]

Plaintiffs here argue that they "are sustaining recurrent
violations of their legal rights.  The inspections are continuing
and each time a citation is issued the property owner must forgo
a hearing or risk criminal sanctions.  Money cannot compensate
for this continuing loss of due process rights."  (Pls. Br. at
32.)  As a result, Plaintiffs argue, they have "demonstrated

---

[14] Although "[c]ourts have . . . held that a plaintiff can
demonstrate that a denial of an injunction will cause irreparable
harm if the claim is based upon a violation of the plaintiff's
constitutional rights," Overstreet v. Lexington-Fayette Urban
County Government, 305 F.3d 566, 578 (6th Cir. 2002) (citing
Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992) (holding
plaintiffs may establish irreparable harm based on an alleged
violation of their Fourth Amendment rights)), under Third Circuit
jurisprudence "[c]onstitutional harm is not necessarily
synonymous with the irreparable harm necessary for issuance of a
preliminary injunction." Hohe, 868 F.2d at 72-73 (citing City of
Los Angeles v. Lyons, 461 U.S. 95, 112-13 (1983)).  The Court
here need not reach that issue, though, as Plaintiffs can not
demonstrate the requisite immediacy.

irreparable harm."  (Id.)  Defendant, on the other hand, argues
that Plaintiffs are not able to satisfy the requirement of
"immediate irreparable injury" in that "there is no contention
that Plaintiffs have been or will be prosecuted by reason of
their ownership of duplexes."[15] (Def. Br. at 9.)  This Court
agrees with Defendant, especially considering that "[s]ince the
inception of the property maintenance code inspection process for
duplexes, no property owners of owner-occupied duplexes have been
incarcerated, nor have any daily fines been imposed and collected
against the owners of owner-occupied duplexes as a result of the
property maintenance code inspection process."  (10/15/04 Amet
Cert. ¶ 5.)  For these reasons, Plaintiffs are not entitled to a
preliminary injunction on their Due Process claims.

This holding – that Plaintiffs have not demonstrated a
likelihood of immediate and irreparable harm to their due process
rights – should not be interpreted as an endorsement of the lack
of an appellate review procedure in the Collingswood ordinance.
Indeed, the more sensible practice may be, as the BOCA Code
suggests, to have some sort of informal appeal if the owner
disputes that the violation is warranted under the terms of the

---

[15] Moreover, Defendant concedes that "[t]o the extent that . 
. . . duplexes existed prior to the amendment to the Borough Code
prohibiting duplexes in the Borough . . ., the use of the subject
properties as duplexes appears to be a valid, pre-existing, non-
conforming use, against which no municipal prosecution is
permitted or sought by the Borough."  (Def. Br. at 9.)

ordinance.  The lack of such an appeal process at present, however, has not been shown upon the record in this case to have harmed Plaintiffs, or to be likely to cause harm in the immediate future.

**IV.  CONCLUSION**

As the foregoing discussion explains, Plaintiffs have failed to state a claim upon which relief can be granted on their First and Fourth Amendment, Substantive Due Process, Equal Protection, and State constitutional claims.  Accordingly, those claims will be dismissed.  Plaintiffs' due process claim will remain, though Plaintiffs are not entitled to a preliminary injunction.  The accompanying Order will be entered.

**June 22, 2005**                     s/ *Jerome B. Simandle*
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge

28